IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILSON ORTHOPEDICS MEDICAL & REHABILITATION CENTER, LLC**<br><br>Plaintiff,<br><br>v.<br><br>**CAR ACCIDENT COMPENSATION ADMINISTRATION (ACAA) and MARGARITA NOLASCO SANTIAGO,**<br><br>Defendants. | Civil No. 20-1764 (GMM) |

## REPORT AND RECOMMENDATION

Plaintiff Wilson Orthopedics Medical & Rehabilitation Center LLC ("Wilson Orthopedics") filed this action against the Car Accident Compensation Administration ("ACAA") and Margarita Nolasco-Santiago ("Nolasco"). Nolasco is sued in her official capacity, as past Administrator of ACAA, and in her personal capacity. Wilson Orthopedics asserts two causes of action in the complaint: the first, for political discrimination for the termination of its contract with ACAA and the withholding of payment for professional services, and the second, for breach of contract under Puerto Rico law. Pending before the Court are ACAA's and Nolasco's motions for summary judgment. Docket Nos. 35, 42. Wilson Orthopedics opposed. Docket Nos. 48, 50. The parties replied and sur-replied. See Docket Nos. 68, 71, 83. Also pending before the Court is Nolasco's motion for judicial notice, Wilson Orthopedics' opposition, and Nolasco's reply. Docket Nos. 46, 63, 78. After carefully considering the parties' filings, the corresponding statements of facts and the evidence submitted by both sides, the Court recommends that ACAA's and Nolasco's motions for summary judgment be **GRANTED** and that Nolasco's motion for judicial notice be deemed **MOOT**.

1

## I.     Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is considered genuine if "a reasonable jury, drawing favorable inferences [for the nonmovant], could resolve it in favor of the nonmoving party." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014) (citation omitted). A fact is "material" if it could potentially affect the outcome of the suit. American Steel Erectors, Inc. v. Local Union No. 7, 536 F.3d 68, 75 (1st Cir. 2008). However, "[c]onclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact." Velázquez-Pérez, 753 F.3d at 270 (citations omitted).

A party moving for summary judgment bears the burden of proving that there are no genuine issues of material fact and that judgment as a matter of law is warranted. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The moving party "may affirmatively produce evidence that negates an essential element of the non-moving party's claim" or "point to evidentiary materials already on file . . . that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). "[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Carmona, 215 F.3d at 133; Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015). In evaluating a motion for summary judgment, the Court must view "'the record in the light most favorable to the nonmovant' and must make 'all reasonable inferences in that party's favor.'" Espacio Residential, LLC v. Gómez-Sánchez, 2023 WL 3548974, at *2 (D.P.R. May 18, 2023) (quoting García-García v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017)).

## II. Uncontested Facts

After examining the parties' submissions, but having disregarded any legal arguments and conclusory statements in the parties' statements of facts,[1] the Court finds that the following material facts are not in dispute:

1. ACAA is a public corporation. Docket No. 41, ACAA Statement of Uncontested Facts ("ACAA SUF") 1.

2. Wilson Orthopedics is a limited liability company organized under the laws of Puerto Rico, which was registered by Dr. Jorge E. Rodríguez Wilson. ACAA SUF 2; Docket No. 41-1.

3. Dr. Jorge E. Rodríguez Wilson is the sole member of Wilson Orthopedics. ACAA SUF 3.

4. Wilson Orthopedics and ACAA executed Contract No. 2012-P00299 on June 15, 2012 (herein the "2012 Contract"). ACAA SUF 4; Docket No. 41-4.

5. The 2012 Contract expired by its own terms on May 16, 2014. ACAA SUF 5.

6. Wilson Orthopedics and ACAA executed another contract, Contract No. 2018-P00204, on March 16, 2018 (herein the "2018 Contract"). ACAA SUF 9; Docket No. 42-6, Nolasco Statement of Uncontested Facts ("Nolasco SUF") 1; Docket No. 42-1.

7. Section XIII of the 2018 Contract provides that either party may terminate the contract with 30 days of advanced written notice. ACAA SUF 15; Nolasco SUF 2; Docket No. 42-1.

8. Nolasco was the Executive Director of ACAA from August 7, 2019, to January 11, 2021. Nolasco SUF 3.

9. A termination letter signed by Nolasco was sent to Wilson Orthopedics on January 13, 2020. The letter provided for the cancellation of the 2018 Contract effective February 18, 2020. ACAA SUF 16; Nolasco SUF 9-10; Docket Nos. 41-8, 42-2.

10. Nolasco does not recall ever meeting or speaking with Dr. Jorge Rodríguez Wilson. ACAA SUF 17; Nolasco SUF 11.

---

[1] See Cotto-Vázquez v. United States, 2021 WL 965825 at *28 n.7 (D.P.R. Mar. 11, 2021) (quoting Cruz-Acevedo v. Toledo-Dávila, 660 F.Supp.2d 205, 209 (D.P.R. 2009) ("[a]s a general principle, parties may not include legal arguments or conclusions in their statement of facts.")).

11. On December 11 and 18, 2018, Telemundo's Ray y sus Rayos X ("Rayos X") televised a special report about the Medical License and Disciplinary Board ("Board") and multiple malpractice complaints filed against medical doctors, where the Board was characterized as deficient for not acting against medical doctors who were sued or who had disciplinary actions filed against them. Docket No. 51, Wilson Orthopedics Statement of Additional Facts ("Wilson SAF") 49.

12. ACAA disregarded the special report and never contacted Wilson Orthopedics or Dr. Rodríguez Wilson regarding the allegations in the December 11 and 18, 2018 editions of the Rayos X report. Wilson SAF 50.

13. On November 5, 2019, Rayos X broadcasted a follow-up of the special report transmitted on December 11 and 18, 2018 (the "November 2019 Report"). Wilson SAF 51; Nolasco SUF 5.

### III. Discussion

**1. Section 1983 – Political Discrimination**

Section 1983 provides a vehicle for a plaintiff to vindicate federal rights. See 42 U.S.C. § 1983; Albright v. Oliver, 510 U.S. 266, 271 (1994); Maldonado-González v. Puerto Rico Aqueduct and Sewer Authority, 2023 WL 2601940, at *3 (D.P.R. Mar. 22, 2023). This includes the freedom of belief and association protected by the First Amendment of the U.S. Constitution. An employee who is terminated due to his political affiliation may have a claim under the First Amendment. See Elrod v. Burns, 427 U.S. 347, 359-360 (1976). First Amendment protection extends to public employees. See García-González v. Puig-Morales, 761 F.3d 81, 92 (1st Cir. 2014). It also extends to independent contractors with preexisting commercial relationships with the government. Id. The First Amendment thus prohibits the termination of a government contract due to the exercise of political association or the expression of political allegiance. Id. at 93 (quotations and citations omitted). Failure to pay for services rendered due to the government contractor's political affiliation may also be actionable under the First Amendment. Rosaura Bldg. Corp. v. Municipality of Mayaguez, 2013 WL 11288884, at *9 (D.P.R. April 26, 2013) (aff'd 778 F.3d 55 (1st Cir. 2015)).

To establish a *prima facie* political discrimination claim, a plaintiff needs to prove that: (1) plaintiff and defendant have opposing political affiliations, (2) defendant is aware of plaintiff's affiliation, (3) an adverse employment action occurred, and (4) political affiliation was a substantial or motivating factor for the adverse employment action. See Reyes-Orta v. Puerto Rico Highway and Transp. Auth., 811 F.3d 67, 73 (1st Cir. 2016) (citations omitted). Plaintiff bears the

4

initial burden to produce sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor behind the adverse employment action. See Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998); González-De-Blasini v. Fam. Dep't, 377 F.3d 81, 85 (1st Cir. 2004) (citing Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977)). Circumstantial evidence alone can support a finding of political discrimination. See Acevedo Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993); Rodríguez-Ríos, 138 F.3d at 24. But a discrimination claim cannot be speculative or supported by general allegations. See González-De-Blasini, 377 F.3d at 86; Cosme Rosado v. Serrano-Rodríguez, 360 F.3d 42 (1st Cir. 2004). "Plaintiff's 'showing requires more than merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly.'" López-Rosado v. Molina-Rodríguez, 2012 WL 4681956, at *2 (D.P.R. Sept. 28, 2012) (citing Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000)). Although a plaintiff need not produce direct evidence of a politically based discriminatory animus, a plaintiff must *always* show a causal connection between the defendant's conduct and his political beliefs. See Sueiro Vázquez v. Torregrosa De La Rosa, 380 F.Supp.2d 63, 72 (D.P.R. 2005) (citing LaRou v. Ridlon, 98 F.3d 659, 662 (1st Cir. 1996) (emphasis added)).

Once the plaintiff establishes a *prima facie* case of political discrimination, the burden shifts to the defendant to demonstrate that it would have made the employment decision regardless of plaintiff's political affiliation. Reyes-Orta, 811 F.3d at 73 (citations omitted). The burden of persuasion does not shift back to the plaintiff. Padilla-García, 212 F.3d at 77. Plaintiff can ultimately prevail by demonstrating that the proffered non-discriminatory reason for the adverse employment action is pretextual. See Mercado-Ruiz v. Carazo, 2016 WL 1171508, at *4 (D.P.R. Mar. 23, 2016) (citation omitted). "Plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-García, 212 F.3d at 77. The evidence used by plaintiff to establish a *prima facie* case may be sufficient to establish an inference of pretext. Id. at 78.

ACAA moved for summary judgment of Wilson Orthopedics' political discrimination claim alleging that Wilson Orthopedics cannot establish a *prima facie* case of political discrimination. First, because there is no admissible evidence that Nolasco, the decision-maker, had any knowledge of Dr. Rodríguez Wilson's political affiliation. Second, because Wilson Orthopedics has put forth no evidence that Dr. Rodríguez Wilson's political affiliation was a substantial or motivating factor of the decision to terminate Wilson Orthopedics' contract with

5

ACAA. And third because, even if Wilson Orthopedics could establish that political animus played a role in the decision to terminate the contract, it will be unable to establish that it was the ultimate reason for the termination. Docket No. 35 at pp. 5-14. Wilson Orthopedics opposed by arguing that Dr. Rodríguez Wilson provided professional services to ACAA since 2006. And that, but for the political discrimination, Wilson Orthopedics had an expectation to continue providing services to ACAA. Docket No. 50 at p. 6. Wilson Orthopedics alleges that the 2018 Contract was terminated for political reasons. Id.

To establish the first two elements of its *prima facie* political discrimination claim, Wilson Orthopedics relies on Dr. Rodríguez Wilson's statement under penalty of perjury. Docket No. 51-1. Dr. Rodríguez Wilson states that he has personal knowledge that Nolasco supported the candidacy of Wanda Vázquez in the 2020 New Progressive Party (NPP) primaries for Governor. Id. at ¶ 9. He also states that he openly supported Vázquez's adversary, Pedro Pierluisi, in the NPP primaries; that he raised funds for a candidate for Mayor of San Juan that supported Pierluisi's candidacy; and that Luis Maldonado-Lafuente ("Maldonado-Lafuente"), who worked in ACAA "for some time" as the Director of the Contracting Department, knew of his support for Pierluisi. Id. at ¶ 9-11. Dr. Rodríguez Wilson further states that, on December 27, 2019, Haydee Alamo ("Alamo"), an independent contractor who provided services for Wilson Orthopedics, met with Nolasco and "reported" back that "she told Nolasco that [Dr. Rodríguez Wilson] supported Pierluisi's candidacy for Governor. Id. at ¶¶ 14-15. Wilson Orthopedics points to the cancellation of the 2018 Contract and ACAA's withholding of payments as adverse employment actions. Docket No. 50 at 9. Wilson Orthopedics argues that there is evidence that political animus was a substantial motivating factor for the adverse employment actions. And points to the fact that Dr. Rodríguez Wilson had been rendering services to ACAA for 14 years and to the temporal proximity between Nolasco being informed of Dr. Rodríguez Wilson's political affiliation and the termination of the 2018 Contract. Docket No. 50 at 10.

ACAA does not challenge that Dr. Rodríguez Wilson and Nolasco could have had different political affiliations. But ACAA does challenge Wilson Orthopedics' contention that it has admissible evidence of Nolasco's knowledge of Dr. Rodríguez Wilson's political affiliation to establish the second prong of the *prima facie* claim of political discrimination. As described above, Wilson Orthopedics relies on Dr. Rodríguez Wilson's statement that he received a report of a conversation between Alamo and Nolasco in which Alamo supposedly informed Nolasco of Dr.

Rodríguez Wilson's political affiliation. Mr. Rodríguez Wilson was not present during the conversation. The same was "reported" back to him by Alamo. ACAA objects to this as inadmissible hearsay. Docket No. 71 at p. 2.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). Affidavits are an acceptable form of evidence to support an opposition to motion for summary judgment. Malavé-Torres v. Cusido, 919 F.Supp.2d 198, 204 (D.P.R. 2013). In fact, "even a clearly self-serving affidavit constitutes evidence which the court must consider when resolving summary judgment motions." Id. If the affidavit contains specific facts and is based on first-hand knowledge, it is competent evidence to support or defeat summary judgment. Id.; Levine-Díaz v. Humana Health Care, 990 F.Supp.2d 133, 140 (D.P.R. 2014). However, evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment. Vázquez v. López-Rosario, 134 F.3d 28, 33 (1st Cir. 1998); Dávila v. Corp. De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 17 (1st Cir. 2007); Kenney v. Floyd, 700 F.3d 604, 609 (1st Cir. 2012). As such, a statement in an affidavit based only on inadmissible hearsay cannot defeat a motion for summary judgment.

Hearsay consists of out of court statements offered to prove the truth of the matter. See Fed.R.Civ.P. 801(c). Wilson Orthopedics has included Alamo's conversation with Nolasco in Dr. Rodríguez Wilson's statement to prove that Nolasco had knowledge of Dr. Rodríguez Wilson's political affiliation. Its probative value depends on the truth of Alamo's unsworn out-of-court statement. This, as argued by ACAA, is classic hearsay and would be inadmissible at trial. See e.g., Dávila, 498 F.3d at 17 (affirming inadmissibility of affidavit where declarant asserted that co-workers told him that employer believed that he was too old for the job; summary judgment granted dismissing ADEA claim); Noviello v. City of Bos., 398 F.3d 76, 85 (1st Cir. 2005).

In its sur-reply, Wilson Orthopedics argued that Alamo's statement is admissible under the residual exception to hearsay in Rule 807 of the Federal Rules of Evidence. See Docket No. 83 at p. 2. But Wilson Orthopedics made absolutely no effort to develop the argument. Wilson Orthopedics has not put the Court in a position to evaluate, for instance, whether Alamo's statement is supported by sufficient guarantees of trustworthiness or whether there is additional evidence to corroborate the statement. See López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th

7

22, 33 n.3 (1st Cir. 2023) (courts will not consider issues that are "unaccompanied by some effort at developed argumentation") (citations omitted). The reported conversation between Alamo and Nolasco is inadmissible to establish Nolasco's knowledge of Dr. Rodríguez Wilson's political affiliation.

Dr. Rodríguez Wilson also stated that Maldonado-Lafuente had purported knowledge of his political affiliation. But Dr. Rodríguez Wilson fails to establish how, if in any way, Maldonado-Lafuente—while he worked at ACAA—may have participated in the decision to terminate the 2018 Contract, when or how Maldonado-Lafuente would have shared with Nolasco his knowledge, or how Maldonado-Lafuente's knowledge could be attributed to Nolasco. Indeed, we do not even know whether Maldonado-Lafuente worked at ACAA during the same period as Nolasco or whether Nolasco has ever met or spoken to Maldonado-Lafuente. On the other hand, Nolasco has asserted that she was unaware of Dr. Rodríguez Wilson's political affiliations. Docket No. 41-6 at ¶ 11. And it is uncontested that Nolasco does not recall ever meeting or speaking to Dr. Rodríguez Wilson. As such, that Maldonado-Lafuente may have known of Dr. Rodríguez Wilson's political affiliation is in and of itself insufficient to establish that Nolasco knew of Dr. Rodríguez Wilson's political affiliation.

Dr. Rodríguez Wilson also states that he "openly" supported the Pierluisi candidacy and that he raised funds for another politician that also supported Pierluisi. At summary judgment stage, a plaintiff is tasked with pointing to specific facts in the record that could demonstrate the existence of an authentic dispute. The fact that Dr. Rodríguez Wilson may have openly supported the Pierluisi candidacy or that he could have raised funds for another politician's race is vague and unspecific, and insufficient to attribute Nolasco knowledge of Dr. Rodríguez Wilson's political affiliation. See Corcino-Rodriguez v. State Ins. Fund Corp., 965 F. Supp. 2d 187, 191 n.8 (D.P.R. 2013); Ocasio-Hernández, 777 F.3d at 8–9 (evidence of political discrimination must consists of more than unsubstantiated suspicion).

Having no competent evidence to establish that Nolasco knew of Dr. Rodríguez Wilson's political affiliation, Wilson Orthopedics' claim of political affiliation fails on the second element of the *prima facie* test. But even if we were to assume that Wilson Orthopedics could establish the four (4) elements of the *prima facie* test,[2] there is still insufficient evidence in the summary

---

[2] Wilson Orthopedics points to the fact that Dr. Rodríguez Wilson had been rendering services to ACAA for 14 years and to the temporal proximity between Nolasco having been informed of Dr. Rodríguez Wilson

judgment record to defeat ACAA's proffered non-discriminatory reason for the termination of the 2018 Contract. ACAA asserted that the termination of the 2018 Contract was motivated by the November 2019 Report, which centered around multiple malpractice claims against Dr. Rodríguez Wilson, who was identified in the report as a member of ACAA's network of service providers. Docket No. 41-6 at ¶¶ 4-6. ACAA relies on Nolasco's statement under penalty of perjury. Wilson Orthopedics in turn argues that such evidence is inadmissible hearsay. See Docket No. 50 at pp. 11-13.[3] Wilson Orthopedics further argues that the justification to terminate the 2018 Contract is not credible because the November 2019 Report was a follow up to a 2018 report, after which ACAA took no action. Docket No. 50 at p. 13; Docket No. 51-1 at ¶¶ 37-39.

It is undisputed that, on December 11 and 18, 2018, Rayos X made a special report about the Medical License and Disciplinary Board and multiple malpractice complaints against medical doctors, in which the Board was characterized as deficient for not acting against medical doctors who were sued or who had disciplinary actions filed against them. It is also undisputed that, at that time, ACAA did not take any action and did not contact Wilson Orthopedics or Dr. Rodríguez Wilson. It is also uncontested that the November 2019 Report was a follow-up of that 2018 report. Nolasco states that the November 2019 Report included claims against Dr. Rodríguez Wilson. Docket No. 41-6 at ¶¶ 4-6. Subsequently, because of that November 2019 Report, ACAA "questioned the wisdom and feasibility of its continued contractual relationship with Dr. Rodríguez." And that, upon review of the 2018 Contract and consultation with ACAA's legal department, the decision was made to terminate the 2018 Contract. Id. at ¶¶ 7-8.[4] Nolasco's statement to the effect that the November 2019 Report was what prompted the decision to terminate the 2018 Contract is not hearsay. Nolasco is not making the statement to prove that Dr. Rodríguez Wilson incurred in medical malpractice. The only purpose served by the statement is to

---

political affiliation (December 27, 2019) and the termination of the 2018 Contract (January 13, 2020), as evidence that political animus was a substantial motivating factor for the adverse employment actions (fourth element of the *prima facie* test).

[3] Wilson Orthopedics also objected to the link to the YouTube video of the November 2019 Report and to Nolasco's request that the Court take judicial notice of the November 2019 Report. Given the recommendation with respect to the admissibility of Nolasco's statement that the November 2019 Report motivated the termination of the contract, there is no need to address those objections.

[4] There is no dispute that the 2018 Contract could be terminated at will with a 30-day advanced written notice. See Section XIII of the 2018 Contract ("Any of the parties may terminate this contract through a written notification thirty (30) days prior to the date on which they wish the contract to be resolved, without the PROVIDER having a right to any additional compensation, except for what they have earned as of that date."). Docket No. 42-1.

establish that the November 2019 Report prompted the decision to terminate the 2018 Contract, regardless of whether the reported facts or the investigation were correct. Nolasco had personal knowledge of what prompted the decision to terminate the 2018 Contract as she was the person who made the decision and signed the termination letter. Nolasco's statement that it was the November 2019 Report that prompted the decision to terminate Wilson Orthopedics' contract is admissible. See e.g., Navedo v. Nalco Chem, Inc., 848 F.Supp.2d 171, 180–81 (D.P.R. 2012) (considering statements for purpose of proving that employer received complaints of employee performance and the effect that those complaints had in the decision to recommend termination of employment but not to prove that employee performance was actually deficient); Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 444-45 n.1 (1st Cir. 2009) (no abuse of discretion in admitting affidavit in summary judgment with results of investigation because these were brought to explain employer motivation for employment action and not to prove the veracity of the events that were the subject of the investigation). Wilson has not submitted any competent evidence to dispute the fact that the November 2019 Report was what motivated the decision to terminate the 2018 Contract. It has nonetheless argued that, because the November 2019 Report was a follow up to a previous report after which ACAA took no action, the asserted reason for termination was pretextual. But Nolasco did not work for ACAA at the time of the original report in 2018. It is uncontested that Nolasco began work as Executive Director of ACAA on August 7, 2019.

Wilson Orthopedics further claims that the fact that ACAA ignored collection letters is evidence of political animus. Docket No. 50 at p. 14. Wilson Orthopedics has submitted collection letters directed to ACAA for purported unpaid services for the years 2009 through 2012, and 2019. Docket Nos. 51-2, 51-4, 51-5. It has also submitted a 2019 debt certification and 2021 collection letter that suggest that the debt is for services rendered from 2009 through 2012. Per the documents submitted by Wilson Orthopedics, the collection efforts that have been ignored by ACAA are for debts, the bulk of which, accumulated at least eight years prior to the termination of the 2018 Contract in January 2020. See Docket No. 51-6, 51-9. As such, even assuming that these documents are admissible for summary judgment purposes,[5] these cannot be evidence of political

---

[5] ACAA argues that the collection letters and debt certification submitted by Wilson Orthopedics are inadmissible for not having been produced prior to the close of discovery, improper authentication, and hearsay.

animus in 2019. Nothing in the summary judgment record establishes a connection between ACAA's failure to pay the purported debt and a political animus.

Lastly, Nolasco seeks summary judgment of Wilson Orthopedics' political discrimination claim on qualified immunity grounds. "Qualified immunity is an immunity from suit rather than a mere defense to liability." Penn v. Escorsio, 764 F.3d 102, 113 (1st Cir. 2014) (quoting Plumhoff v. Rickard, 572 U.S. 765, 771-2 (2014)). See Camacho Ortíz v. Municipio de San Juan, 2021 WL 1202839, at *10 (D.P.R. March 29, 2021). The doctrine of qualified immunity exists to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). This defense can be raised at the summary judgment stage. Hernández-Zorrilla v. Rosselló-Nevárez, 2021 WL 1931956, at *5 (D.P.R. May 12, 2021) (quoting Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2020)). The test to determine if a defendant is entitled to qualified immunity is (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation. Morales Díaz v. Roldán Concepción, 2023 WL 2351732, 7 (D.P.R. March 3, 2023) (quoting Maldonado v. Fontanés, 568 F.3d 263, 268 (1st Cir. 2009)). Given that Wilson Orthopedics' political discrimination claim fails— there is no violation of a constitutional right— Nolasco in her individual capacity is entitled to qualified immunity. See Maldonado v. Fontanés, 568 F.3d 263, 273 (D.P.R. 2009) (granting qualified immunity to mayor on plaintiff's Fourteenth Amendment claim because the allegations failed to establish a connection between the mayor and the alleged constitutional violation); Wood v. Moss, 572 U.S. 744, 748 (2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)("[o]fficials are sheltered from suit, under […] qualified immunity, when their conduct does not violate clearly established […] constitutional rights")); Pearson v. Callahan, 555 U.S. 223, 245 (2009) (defendants entitled to qualified immunity when constitutional claims not clearly established).

For the reasons discussed above, summary judgment should be **GRANTED** dismissing with prejudice all of Wilson Orthopedics' political discrimination claims.

### 2. Breach of Contract

ACAA has requested summary judgment on Wilson Orthopedics' breach of contract claim by asserting that the claim for $429,000 relates to services provided to ACAA under contracts with

Dr. Rodríguez Wilson or other entities distinct from Wilson Orthopedics, and for services provided prior to Wilson Orthopedics' first contract with ACAA in 2012. Docket No. 35 at pp. 14-15. Wilson Orthopedics argues that the debt is for services rendered during the years 2009 through 2012, and in 2019. Docket No. 50 at p. 14. Wilson Orthopedics also claims that it was assigned the right to collect on the debts to Dr. Rodríguez Wilson and the other related entities and that ACAA's records reflect amounts owed for the years 2009 through 2012, and in 2019. See Docket No. 51-1 at ¶ 30.

ACAA alternatively requests that the Court decline to exercise supplemental jurisdiction over the breach of contract claim under Puerto Rico law. Docket No. 71 at pp. 6-7. Given that the Court is recommending summary dismissal of the only federal law claim, Wilson Orthopedics' only viable claim is one for collection. Such a claim should be dismissed without prejudice and presented, if warranted, in state court. See Rivera v. Murphy, 979 F.2d 259, 265 (1st Cir. 1992) (quoting Cullen v. Mattaliano, 690 F.Supp. 93, 99 (D.Mass.1988) ("it is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that federal cause of action is the subject of a successful summary judgment motion, the pendent state claims should be dismissed"); Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 191 (1st Cir. 2011). The Court recommends that summary judgment be **GRANTED** dismissing without prejudice Wilson Orthopedics' claim for breach of contract under Puerto Rico law.

### IV.    Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' Motions for Summary Judgment be **GRANTED.** The Court also recommends that Nolasco's motion for judicial notice be deemed **MOOT**.

This Report and Recommendation is filed pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have **fourteen (14) days** to file any objections to this Report and Recommendation. Failure to file specific objections within the specified time precludes further review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccarone, 973 F. 2d 22, 30-31 (1st Cir. 1992); Maisonet v. Genett Group,

Inc., 863 F.Supp.2d 138, 143 (D.P.R. 2012) (absent specific objection, no obligation to review portion of Magistrate Judge's recommendation).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 8th day of September 2023.

                                                  s/Giselle López-Soler
                                                  GISELLE LÓPEZ-SOLER
                                                  United States Magistrate Judge