**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Wilson Orthopedics Medical & Rehabilitation Center LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Car Accident Compensation Administration (ACAA)and Margarita Nolasco Santiago, <br><br> Defendants. | **Civil No. 20-1764(GMM)** |

<u>**OPINION AND ORDER**</u>

Before the Court is Magistrate Judge's Giselle López-Soler ("MJ") September 8, 2023 Report and Recommendation ("R&R") regarding Defendants' *Individual Capacity Defendant's Motion for Summary Judgment* and *Motion for Summary Judgment and Memorandum in Support Thereof* (collectively "Motions for Summary Judgment") (Docket Nos. 33, 35) and co-Defendant Margarita Nolasco Santiago's ("Nolasco") *Motion for Judicial Notice* (Docket No. 46). For the following reasons, the Court **ADOPTS** the R&R as amended.

## I.  BACKGROUND

This case arises out of the dissolution of a medical specialist employment contract ("2018 Contract") for medical services between Car Accident Compensation Administration ("ACAA"), a state government agency overseeing insurance and compensation for traffic incidents in Puerto Rico and Wilson

Civil No. 20-1764(GMM)
Page -2-

Orthopedics Medical and Rehabilitation Center, LLC's ("Wilson Orthopedics" of "Plaintiff"), an independent medical provider.

Plaintiff filed a complaint against co-Defendants, ACAA and Nolasco in both, her personal and official capacity as the former Executive Director of ACAA (collectively "Defendants"). Plaintiff alleges political discrimination and associated retaliation, and unpaid invoices from between 2009 and 2012. (Docket No. 1 at 5-9). Specifically, Wilson Orthopedics first alleges that ACAA and Nolasco wrongfully canceled its contract with Plaintiff based on the political affiliation of Wilson Orthopedics' sole shareholder, Dr. Jorge E. Rodríguez Wilson ("Dr. Rodríguez"). (Docket No. 1 at 5.) As such, Plaintiff requests that the Court award it $429,000 in allegedly discriminatorily withheld payments for services rendered by Dr. Rodríguez and $11 million in fees expected under the canceled contract had the employment relationship continued. Id. Wilson Orthopedics also asks the Court to find that pursuant to Puerto Rico Civil Code, 31 P.R. Laws Ann. §§3018, 3024, Defendants owe Plaintiff $429,000 in unpaid debts and $4 million in expectation damages for breach of the canceled contract. Id. at 6-7.

On May 5, 2022, Nolasco filed a motion for summary judgment (Docket No. 33) stating that Wilson Orthopedics: (1) failed to meet the pleading standard for a Section 1983 political discrimination claim or present sufficient facts to survive a

summary judgment motion; and (2) failed to demonstrate that ACAA's cancelation of the 2018 Contract with Wilson Orthopedics was not justified by non-political discrimination grounds. (Docket No. 33 at 2-3, 11-12). Moreover, Nolasco states that she is entitled to qualified immunity from Defendant's claims given that she was acting within the scope of her professional responsibilities and did not violate any of Plaintiff's constitutional rights. Id. at 6, 18-17. Finally, Nolasco notes that Plaintiff did not present evidence that Nolasco was even employed by ACAA at the time that its pendant jurisdiction contract claims supposedly arose. Id. at 4, 19-20.

Shortly thereafter, on May 31, 2022, ACAA filed a motion for summary judgment principally claiming that Plaintiff presented "[n]ot one shred of evidence [that] supports the notion that political discrimination had anything to do with the termination of [Wilson Orthopedics] contract with ACAA." (Docket No. 35 at 1). Moreover, ACAA notes that even if evidence of any political animus existed, Wilson Orthopedics would still be unable to show that had it not been for political animus the 2018 Contract would not have been canceled. Id at 2.

On June 17,2022, Nolasco filed a *Motion for Judicial Notice* (Docket No. 46) requesting that the Court take notice of the facts that: (1) the regular broadcast time of the "Jay Fonseca y su Rayos X" television show between 2015 and 2021; (2) the airing of the

Civil No. 20-1764(GMM)
Page -4-

special investigative report aired on November 5, 2019; (3) the
length of the particular November 5 show; and (4) that the November
5 report informed on malpractice allegations against Dr.
Rodríguez. (Docket No. 46 at 2-3).

This Court referred Defendants' summary judgment motions and
Nolasco's *Motion for Judicial Notice* to the MJ on December 9, 2022
for a R&R. (Docket No. 85). After considering the available
materials, the MJ issued her R&R on September 8, 2023 recommending
that the Court: (1) grant Defendant's Motions for Summary Judgment
on the federal political discrimination claims and accordingly,
finding Nolasco's *Motion for Judicial Notice* to be rendered moot;
and (2) dismiss the remaining contract claims arising under Puerto
Rico law without prejudice. (Docket No. 94). Plaintiff submitted
its objection to the MJ's R&R on September 22, 2023, requesting
that the Court reconsider the MJ's findings stating that there was
sufficient evidence to find a genuine dispute of material fact as
to whether the 2018 Contract cancellation was motivated by
political animus. (Docket No. 95).

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate when the moving party establishes
that "there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A genuine dispute exists is "a reasonable jury, drawing

favorable inferences [for the nonmovant], could resolve it in favor of the nonmoving party." Velazquez-Perez v. Developers Diversified Realty Corp., 753 F .3d 265, 270 (1st Cir. 2014) (citations omitted). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (internal quotation marks omitted). But a court should not consider "conclusory allegations, improbably inferences, and unsupported speculations" in determining whether a genuine dispute exists. Velazquez-Perez, 753 F .3d at 270 (citations omitted).

In a summary judgment motion, the moving party bears the burden of proving that there is a lack of material evidence supporting the non-movant's case. See Cellotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The moving party may "affirmatively produce evidence that negates an essential element of the non-moving party's claim" or "point to evidentiary materials already on file…that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F .3d 124, 132 (1st Cir. 2000). In considering a motion for summary judgment, the court must consider "the record in the light most favorable to the nonmovant' and must make all reasonable inferences in that party's favor." García-García v. Costco

Civil No. 20-1764(GMM)
Page -6-

Wholesale Corp., 878 F3d 411, 417 (1st Cir. 2017); *see also* Murray
v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015).

### III. UNCONTESTED FACTS

After examining the parties' submissions, but having
disregarded any legal arguments and conclusory statements in the
parties' statements of facts, the Court finds that the following
material facts are not in dispute:

1.  ACAA is a public corporation created by Act 138 of
    June 26, 1968, as amended. (Docket Nos. 41 ¶1; 51
    at 1).

2.  Wilson Orthopedics is a limited liability company
    organized under the laws of Puerto Rico, which was
    registered by Dr. Rodríguez on April 1, 2011.
    (Docket Nos. 36-1; 41 at ¶ 2; 51 at 2).

3.  Dr. Rodríguez is the sole member of Wilson
    Orthopedics. (Docket Nos. 36-1; 41 at ¶ 3; 51 at
    2).

4.  Wilson Orthopedics and ACAA began their formal
    relationship on June 15,2012 via the execution of
    executed Contract No. 2012-P00299("2012
    Contract"). (Docket Nos. 36-4, 41 at ¶ 4; 51 at 2)

5.  The contract between Wilson Orthopedics and ACAA
    was created for the purpose of retaining Dr.
    Rodríguez's services "so that he will provide the
    Covered Health Care Services to the ACAA's Insured
    in his capacity as an orthopedic surgeon." (Docket
    No. 33-1 at 1).

6.  The 2012 Contract expired by its own terms on May
    16, 2014. (Docket Nos. 36-4, 41 ¶ 5; 51 at 3).

7.  Wilson Orthopedics and ACAA executed another
    contract, Contract No. 2018-P00204, on March 16,

2018 [2018 Contract]. (Docket Nos. 41 at ¶ 9; 51 at 4; 33-6 at ¶ 1; 42-1; 49 at 1).

8.  Section XIII of the 2018 Contract provides that either party may terminate the contract with 30 days of advanced written notice. (Docket Nos. 41 at ¶ 15; 51 at 7; 33-6 at ¶ 2; 42-1. 36 at ¶ 15; 49 at 2).

9.  Nolasco was the Executive Director of ACAA from August 7, 2019, to January 11, 2021. (Docket Nos. 41 at ¶ 17; 51 at 7; 33-6 at ¶ 3; 36 at ¶ 17; 49 at 3).

10. On December 11 and 18, 2018, Telemundo's Ray y sus Rayos X ("Rayos X") televised a special report about the Medical License and Disciplinary Board ("Board") and multiple malpractice complaints filed against medical doctors, where the Board was characterized as deficient for not acting against medical doctors who were sued or who had disciplinary actions filed against them. (Docket Nos. 51, 49 at 3, 11).

11. Following the December 11 and 18, 2018 airing of the Rayos X report, ACAA did not cancel the 2018 Contract nor did it ever contact Wilson Orthopedics or Dr. Rodríguez Wilson. (Docket No. 49 at 11).

12. On November 5, 2019, Rayos X broadcasted a follow-up of the special report transmitted on December 11 and 18, 2018 (the "November 2019 Report"). (Docket Nos. 41 at ¶ 10; 49 at 3).

13. The report identified Dr. Rodríguez as a member of ACAA's network of service providers. (Docket No. 41 at ¶ 12; 49 at 3; 51 at 5-6).

14. A termination letter signed by Nolasco was sent to Wilson Orthopedics on January 13, 2020. The letter provided for the cancellation of the 2018 Contract effective February 18, 2020. (Docket Nos. 41-8, 42-2; 41 at ¶ 16; 51 at 7; No. 33-6 at ¶ 9; 36 at ¶ 16; 49 at 4).

Civil No. 20-1764(GMM)
Page -8-

15.     Nolasco, as ACAA's Executive Director, signed the
        termination letter notifying Wilson Orthopedics on
        the cancellation of the 2018 Contract. Docket No.
        33-6 at ¶ 10.

### IV.  DISCUSSION

A Court may refer motions to a Magistrate Judge for review
and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P.
72(b); Loc. R. 72). Parties adversely affected by an R&R may then
"serve and file specific written objections to the proposed
findings and recommendations" within 14 days of receiving a copy
of an R&R. Id.

Upon timely objection, the Court must then review *de novo*
"those portions of the report or specified proposed findings or
recommendation to which specific objection is made." Total
Petroleum Puerto Rico Corp. v. Fonseca-Marrero, 2018 U.S. Dist.
LEXIS 197986, 2018 WL 6131777, at *1 (D.P.R. 2018) (quotation
omitted); *see also* United States v. Valencia-Copete, 792 F.2d 4
(1st Cir. 1986). In performing this review, the Court may "accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C. §
636(a)(b)(1).

After completing an independent review of the record, the
MJ's R&R, and the Plaintiff's objections to the MJ's
recommendations, the Court **ADOPTS** the MJ's determinations and
recommendations for resolving issues presented at Docket Nos. 33,

Civil No. 20-1764(GMM)
Page -9-

35, 46, 94, and 95. As such, the Court further finds Defendant
Nolasco's motion for judicial notice to be rendered **MOOT**. The Court
thus **GRANTS** both Defendants' Motions for Summary Judgment.

A.   Section 1983 Political Discrimination Claims

Political discrimination by a state employer, including
retaliation for a contrary political opinion, violates the freedom
of belief and association protected by the First Amendment. Pierce
v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014) (citing
Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st
Cir.2000)). This First Amendment protection "also extend[s] to
independent contractors with preexisting commercial relationships
with the government," "where [the] government retaliates against
a contractor, or a regular provider of services, for the exercise
of rights of political association or the expression of political
allegiance." Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 92 (1st
Cir. 2014) (quoting O'Hare Truck Serv., Inc. v. City of Northlake,
518 U.S. 712, 715, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)). Denial
of payment for services rendered by a government contractor due to
said contractor's political affiliation may create a valid First
Amendment Cause of Action. Rosaura Bldg. Corp. v. Municipality of
Mayaguez, 2013 WL 11288884, at *9 (D.P.R. April 26, 2013(aff'd 778
F.3d 55 (1st Cir. 2015)).

A *prima facie* political discrimination claim under Section
1983 requires a plaintiff to demonstrate: (1) that the plaintiff

and defendant had opposing political dispositions; (2) the defendant was privy to the plaintiff's political affiliation; (3) an adverse employment action occurred; and (4) the plaintiff's political affiliation was a substantial and or a motivating factor behind the adverse employment action. *See* Reyes-Orta v. Puerto Rico Highway and Transp. Auth., 811 F.3d 67, 73 (1st Cir.2016)(citations omitted).

"[N]on policymaking employees have the threshold burden to produce sufficient direct or circumstantial evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action." Rodriguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998) *(citing* LaRou v. Ridlon*,* 98 F.3d 659, 661 (1st Cir.1996); Acevedo-Diaz v. Aponte*,* 1 F.3d 62, 66 (1st Cir.1993)). *See also* Gonzalez-De-Blasini v. Fam. Dep't, 377 F .3d 81, 85 (1st Cir. 2004). "[C]ircumstantial evidence alone can support a finding of political discrimination." Acevedo-Diaz v. Aponte, 1 F.3d at 69 (quoting Anthony v. Sundlun*,* 952 F.2d 603,605 (1st Cir. 1991); Estrada-Izquierdo v. Aponte-Roque*,* 850 F.2d 10, 14 (1st Cir. 1988)). But to substantiate a discrimination claim, plaintiffs must provide more than speculative or general allegations. See Gonzalez-De-Blasini v. Fam. Dep't, 377 F .3d at 86. As such, a mere demonstration that Plaintiff possessed a particular political affiliation, and that Plaintiff incurred an adverse employment

Civil No. 20-1764(GMM)
Page -11-

action is insufficient to substantiate a Section 1983 claim. Lopez
Rosado v. Molina-Rodriguez, 2012 WL 4681956, at *2 (D.P.R. Sept
28, 2012). A plaintiff does not need to produce direct evidence
that the adverse employment action was the immediate result of
discriminatory political animus, but a plaintiff must show a causal
relationship between the employment action and his or her political
beliefs. Sueiro Vazquez v. Torregrosa De La Rosa, 380 F. Supp. 2d
63, 72 (D.P.R. 2005).

Once a plaintiff has established his or her discrimination
prima facie case, "the burden shifts to defendants to articulate
a nondiscriminatory ground for the dismissals, and prove by a
preponderance of the evidence that plaintiffs would have been
dismissed regardless of their political affiliation." *See* Acevedo-
Diaz v. Aponte, 1 F.3d at 66. Even if defendants offer such
evidence, a "[p]laintiff can ultimately still prevail by
demonstrating that the proffered non-discriminatory reason was
mere pretext." Mercado-Ruiz v. Carazo, No. CV 14-1372 (GAG), 2016
WL 1171508, at *4 (D.P.R. Mar. 23, 2016) (citing Padilla-Garcia v.
Guillermo Rodríguez, 212 F.3d at 77).

In May of 2022, both Nolasco and ACAA filed their Motions for
Summary Judgment (Docket No. 33, 35) arguing that Wilson
Orthopedics failed to establish the *prima facie* case for political
discrimination under Section 1983. They posited that Wilson
Orthopedics failed to present evidence that: (1) Nolasco, the

individual responsible for the cancelation of the 2018 Contract,
was aware of Dr. Rodríguez's political affiliation (Docket No. 35
at 6-8); (2) Dr. Rodríguez's political affiliation substantially
contributed to or motivated the decision to terminate the 2018
Contract; Id. at 9-12; and (3) the alleged political discrimination
caused the revocation of the 2018 Contract. Id. Plaintiff disagreed
with Defendants' assessments, contending that Dr. Rodríguez had
been working with ACAA since 2006 and that but for the alleged
political discrimination, Dr. Rodríguez expected to continue that
working relationship as per the terms for the 2018 Contract.
(Docket 50 at 6).

Wilson Orthopedics primarily relied on Dr. Rodríguez's own
testimony, made under penalty of perjury, to substantiate the first
two elements of its political discrimination *prima facie* case.
(Docket No. 51-1). Specifically, Dr. Rodríguez says he knew that
Nolasco supported the 2020 New Progressive Party (NPP) primaries
Gubernatorial candidate, Wanda Vázquez. Id. at ¶ 9. Conversely,
Dr. Rodríguez testified that he openly supported Vazquez's
adversary in the NPP primaries, Pedro Pierluisi. Id. at ¶ 9-11.
Dr. Rodríguez also shares that he helped raise funds for the San
Juan Mayoral Candidate who supported Pierluisi. Id.

As further evidence that Nolasco was aware of Dr. Rodríguez's
political preferences, Plaintiff presents Dr. Rodríguez's
contentions that Nolasco was made aware of his political affinities

through communications made in her presence or via third parties. Dr. Rodríguez states that Luis Maldonado-Lafuente ("Maldonado-Lafuente"), then Director of the Contracting Department at ACAA, was aware that Dr. Rodríguez supported Pierluisi. (Docket No. 51-1 at ¶ 9). Dr. Rodríguez states that an independent contractor who worked with Wilson Orthopedics, Haydee Alamo ("Alamo") also told Nolasco that Wilson supported Pierluisi on December 27, 2019. Id. at ¶ 14-15. Moreover, in its objection to the MJ's R&R, Plaintiff provided further accounts from Dr. Rodríguez claiming that he met Nolasco at an awards banquet and in her presence mentioned his support of Pierluisi to which Nolasco supposedly responded with a "bad look." (Docket No. 95-1 at 2). Plaintiff relies on these alleged communications regarding Rodríguez's political allegiances with or in front of Nolasco regarding and the forthcoming cancellation of the 2018 Contract, after a 14-year contract relationship, as evidence that the adverse employment action was substantially motivated by political animus. (Docket No. 50 at 10).

Defendants do not dispute that Dr. Rodríguez and Nolasco may have different political affiliations. Nevertheless, they argue that Plaintiff presented no evidence substantiating that Nolasco knew of Dr. Rodríguez's political preferences. Thus, Defendants contend that Wilson Orthopedics did not meet the burden of

satisfying the second prong of a Section 1983 claim. The MJ agreed and the Court concurs.

Firstly, Plaintiff states that Alamo reported to Dr. Rodríguez that Alamo told Nolasco of his political affiliation. (Docket No. 50 at 8). ACAA argues that this evidence is inadmissible hearsay and thus cannot be used to support a Section 1983 cause of action. (Docket No. 71 at 2).

Pursuant to Rule 56(c)(4) of the Federal Rule of Civil Procedure, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). An affidavit, even one that is self-serving, may be used to support opposition to a motion for summary judgment. Malavé-Torres v. Cusido, 919 F.Supp.2d 198, 204 (D.P.R. 2013). Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, declarations within an affidavit are only admissible evidence if they are based on personal knowledge. Malavé-Torres v. Cusido, 919 F. Supp. 2d at 201; Fed. R. Civ. P. 56(e).

Civil No. 20-1764(GMM)
Page -15-

Wilson Orthopedics uses Dr. Rodríguez's testimony that Alamo told Nolasco of his political preferences as evidence that Nolasco was aware of Dr. Rodríguez's political affiliations, which differed from her own. (Docket No. 51-1 at ¶ 14-15). ACAA argues that this evidence is inadmissible hearsay not based on Dr. Rodríguez's own knowledge and thus, cannot be invoked to support his Section 1983 prima facie case. (Docket No. 71 at 2-4). Wilson Orthopedics argues that Alamo's statement falls within the residual exception to hearsay under Rule 807 of the Federal Rules of Evidence and is thus admissible. *See* Docket No. 83 at 2.

The MJ agrees with ACAA's assertion that Dr. Rodríguez's report of Alamo's alleged communications with Nolasco are inadmissible hearsay which could not be used as evidence to demonstrate that Nolasco knew of Dr. Rodríguez's political preferences. (Docket No, 94 at 7-8). The Court concurs.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed.R.Civ.P. 801(c). Hearsay evidence, by definition, is not based on personal knowledge. As such, "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment." Davila v. Corp. De P.R. Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007); *see* Fed. R. Civ. P. 56(e) (requiring parties to properly support an assertion of fact); Nor-Dec, Inc. v. Viracon, Inc., 781 F. Supp. 2d 38, 42 (D.P.R. 2010)(citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st

Cir.1990))("[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.") Hearsay may be admissible if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Fed.R.Ev.807.

Wilson Orthopedics cites Alamo's alleged out-of-court statement to Nolasco to substantiate the truth of the fact that Nolasco knew of Dr. Rodríguez's political affiliation. As such, the Court concurs with the MJ that the proffered evidence clearly qualifies as hearsay. Moreover, the Court also finds Plaintiff's argument that Alamo's statement falls within the Rule 807 exception unavailing. As the MJ emphasized, Wilson Orthopedics failed to offer any additional evidence showing either that: (1) there was other evidence to back up Alamo's statement; or (2) that other factors provided additional guarantees of the trustworthiness of Alamo's statement. *See* Quiles v. United States, 2021 U.S. Dist. LEXIS 232111, *12 (D.P.R. 2021) (Stating that "Admissibility of the evidence under this rule depends on guarantees of trustworthiness..."). Generally, "'Congress intended the residual hearsay exception to be used very rarely, and only in exceptional

circumstances.'" <u>United States v. Awer</u>, 770 F.3d 83, 94 (1st Cir. 2014) (quoting <u>United States v. Trenkler</u>, 61 F.3d 45, 59 (1st Cir. 1995)). "Accordingly, the 'proponent of a statement, citing the residual exception, bears a heavy burden.'" <u>Conning v. Halpern</u>, Civ. No. 18-12336, 2021 U.S. Dist. LEXIS 120151, 2021 WL 2646672, at *3 (D. Mass. June 28, 2021) (citation omitted). Here, Plaintiff invoked the residual exception one time in its surreply without providing any additional evidence or argument to substantiate the truthfulness of Alamo's statement, much less sufficient evidence to overcome the significant Rule 807 burden. (Docket 83 at 2). As such, we find that Dr. Rodríguez's testimony regarding Alamo's statement that she told Nolasco of Dr. Rodríguez's political affiliation is inadmissible in reviewing the present summary judgment motions.

Plaintiff also offers Dr. Rodríguez's testimony that Maldonado-Lafuente, a former Director at ACAA, knew of his political affiliation as evidence that Nolasco knew of Dr. Rodríguez's political preferences. (Docket No. 51-1 at ¶ 9). However, as the MJ correctly stated, Plaintiff failed to demonstrate that: (1) Maldonado-Lafuente played any role in the termination of the 2018 Contract; or (2) that Maldonado-Lafuente ever shared his purported knowledge of Dr. Rodríguez's political preferences with Nolasco. (Docket 94 at 8). In fact, Wilson Orthopedics failed to make any explanation of how Maldonado-

Civil No. 20-1764(GMM)
Page -18-

Lafuente's alleged knowledge of Dr. Rodríguez's political affiliations would have any bearing on the adverse employment action of which Plaintiff complains.

In his testimony, Dr. Rodríguez also stated that he openly supported Pierluisi and participated in fundraising for a Mayoral candidate connected to Pierluisi. (Docket No. 51-1 at ¶ 11.) Wilson Orthopedics cites this testimony as further evidence that Nolasco knew of Dr. Rodríguez's political preferences. (Docket No. 50 at 8). However, this Court, like the MJ, finds this argument unconvincing. As the MJ properly notes, the fact that "…Wilson [Orthopedics] may have openly supported the Pierluisi candidacy or that he could have raised funds for another politician's race is vague and unspecific, and insufficient to attribute Nolasco knowledge of Dr. Rodríguez Wilson's political affiliation." (Docket No. 95 at 8).

Finally, in Plaintiff's *Objections to Portions of the Report and Recommendation*, Wilson Orthopedics offered further testimony from an unsworn affidavit by Dr. Rodríguez to attempt to demonstrate that Nolasco was aware of Dr. Rodríguez's political affiliations. Therein, Dr. Rodríguez recounted meeting Nolasco at the 2019 Manuel A. Perez Awards. (Docket No. 95 at 5). Dr. Rodríguez alleges that he spoke to Puerto Rico Governor Wanda Vázquez in the presence of Nolasco. Id. In that encounter, Dr. Rodríguez claims that he "thanked Vázquez Garced for accepting the

position of Governor and that it was good that in 2020 we, the New Progressive Party, [were] going to win again in the next elections with Pierluisi as Governor," and then "Nolasco looked at me badly." Id. According to Plaintiff, this presents evidence that there is a genuine dispute of material fact as to the cause of the 2018 Contract's cancellation. While the Court accepts that this evidence may support a finding that Nolasco was aware of Dr. Rodríguez's political leanings, it cannot agree that this evidence is sufficient to overturn a finding that summary judgment is appropriate. Critically, Dr. Rodríguez's additional testimony does not provide any further evidence that Nolasco's supposed knowledge of his political affiliation was the cause of the 2018 Contract's termination as is required to create an actionable Section 1983 *prima facie* case.

Based on the evidence before the Court, there is no question that the MJ's determination was correct and that Plaintiff failed to offer facts, beyond a range of unsubstantiated suspicions, to establish a *prima facie* case for a valid Section 1983 claim. Plainly, as the MJ rightly found, Wilson Orthopedics failed to put forward any plausible and admissible evidence demonstrating that Nolasco both knew of Dr. Rodríguez's political affiliation and that such affiliation was causally linked to the 2018 Contract's cancelation. Docket 94 at 8.

Civil No. 20-1764(GMM)
Page -20-

Even arguendo that Wilson Orthopedics could advance a valid *prima facie* case for a Section 1983 claim, the Court, like the MJ, would still be compelled to grant Defendant's Motions for Summary Judgment due to Defendants' proffered evidence demonstrating that the 2018 Contract was terminated for a non-discriminatory reason. In their Motions for Summary Judgment, Defendants state that they terminated the 2018 Contract with Wilson Orthopedics in response to a November 2019 investigation by Rayos X that reported multiple malpractice claims against Dr. Rodríguez. (Docket Nos. 33-6 at 2, 35 at 11). Evidence of this report was brought via Nolasco's statement made under penalty of perjury. (Docket No. 33-6).[1]

Plaintiff first states that Nolasco's testimony regarding the November 2019 Report is inadmissible hearsay. (Docket No. 50 at 11-13). Wilson Orthopedics further argues that the video link presented as evidence of the November 2019 Report is an unverifiable accurate reproduction of the original source. Id. at 12. Having dismissed Defendants' proffered evidence, Wilson Orthopedics argues that Defendants' reference to the November 2019 report as the reasoning behind the 2018 Contract cancellation is pretextual. Id. at 13; Docket No. 51-1 at 37-39. Plaintiff

---

[1] It should also be noted that Defendants submitted a YouTube video clip as further evidence of this report and that Nolasco's *Motion for Judicial Notice* requested that the Court take judicial notice of the video. Plaintiffs dispute that the YouTube clip is a verified copy of the original. Given that Nolasco's testimony made under oath is admissible, the Court, like the MJ, considers her statements as sufficient evidence of the video and its contents.

highlights that the 2019 report was a follow-up to an earlier 2018 report and notes that ACAA made no action to cancel the 2018 Contract following the initial report. Id. The MJ and the Court find Wilson Orthopedics' argument unconvincing and conclude that based on the uncontested facts that Defendants presented evidence demonstrating a valid and non-discriminatory reason for canceling the 2018 Contract.

The Parties agree that on December 11 and 18, 2018, Rayos X made a special report critiquing the Medical License and Disciplinary Board for failing to discipline doctors sued or facing disciplinary actions for medical malpractice. (Docket Nos. 51, 49 at 3, 11). It is also uncontested that ACAA did not act or contact Wilson Orthopedics or Dr. Rodríguez following the 2018 report. (Docket No. 49 at 11). It is also undisputed that the November 2019 report cited by Nolasco was a follow up to the 2018 report. (Docket Nos. 41 at ¶ 10; 49 at 3). Neither party disputes that Dr. Rodríguez was named in the Reports. (Docket No. 41-6 at ¶ 4-6; 51 at 5-6).[2] Consequently, ACAA contends that after having learned of the November 2019 report it "questioned the wisdom and feasibility of its continued relationship" with Dr. Rodríguez and that it

---

[2] It should be noted that Plaintiff made a _qualified_ admission to Dr. Rodríguez being referenced in the report stating that: "Dr. Rodr[í]guez was the person who sent a letter to the network's program informing that he was a provider of medical services of high-risk ACCA patients involved in accidents since there are very few orthopedic doctors who would take them for treatment besides UPR Medical Sciences Hospital." (Docket No. 51 at 5-6).

ultimately determined it prudent to cancel the 2018 Contract. (Docket No. 41-6 at para 7-8).

As the MJ correctly notes, Wilson Orthopedics' argument that the November 2019 report was inadmissible hearsay and could not be used to offer an alternative explanation for the cancelation of the 2018 Contract is groundless. (Docket No. 94 at 9-10). Contrary to Wilson Orthopedics' contentions, ACAA and Nolasco do not utilize the Rayos X reports to substantiate the truth of the malpractice claims reported therein, but rather to demonstrate the effect that those reports had on Nolasco and ACAA. While the Rayos X report is an out-of-court statement, it is well settled that an "out-of-court statement may be offered to "show the effect of the words spoken on the listener."" United States v. Feliz, 794 F.3d 123, 132 (1st Cir. 2015) (citing United States v. Bailey, 270 F.3d 83, 87 (1st Cir. 2001)). As such, Defendants' statement that the November 2019 Rayos X report prompted the decision to cancel the 2018 Contract is admissible as evidence of a non-politically discriminatory explanation for the complained of adverse employment action. See e.g., Aponte-Navedo v. Nalco Chem, Inc., 848 F.Supp.2d 171, 180-81 (D.P.R. 2012) (quoting United States v. Castro Lara, 970 F.2d 976, 981 (1st Cir. 1990) ("The hearsay rule does not pertain to statements adduced merely to show that they had some effect on the future actions of a listener."); Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 444-45 n.1 (1st

Cir. 2009) (a court's admission of an affidavit containing results from an investigation to demonstrate an employer's motivation for a particular employment action, not for the truth of the facts reported in the investigation, for summary judgment was appropriate).

Wilson Orthopedics' further fails to demonstrate that the November 2019 Report swayed Defendants' decision to terminate the 2018 Contract. Plaintiff notes that ACAA and Nolasco did not cancel the 2018 Contract or contact Dr. Rodríguez following the earlier December 2018 Rayos X reports, upon which the November 2019 report was based. (Docket No. 50 at 13-14). This failure, Wilson Orthopedics contends, demonstrates that the invocation of the 2019 Report as the reason behind the Contract's cancellation was pretextual. Id. But Wilson Orthopedics never demonstrates that ACAA was aware of the December Reports. Moreover, Nolasco was not an ACAA employee at the time the original Rayos X report aired. (Docket Nos. 41 at ¶ 17; 51 at 7; 33-6 at ¶ 3; 36 at ¶ 17; 49 at 3).

Plaintiff also asserts that ACAA's non-response to collection letters further demonstrate political animus. (Docket No. 50 at 14). Wilson Orthopedics states that it submitted collection letters to ACAA for alleged unpaid services rendered for 2009 through 2012 and 2019. (Docket Nos. 51-2, 51-4, 51-5). Wilson Orthopedics also submitted a 2019 debt certification and 2021

collection letter suggesting the same. However, as the MJ notes, these documents, even if admissible on summary judgment, do not demonstrate political animus driving the January 13, 2020 cancellation of the 2018 Contract. (Docket No. 94 at 11). The Court agrees, finding that nothing in the summary judgment record demonstrates that ACAA's alleged failure to pay debts owed to Plaintiff relate to or are motivated by political animus against Dr. Rodríguez. Id.

Finally, co-Defendant Nolasco contends that the Court should award her summary judgment on grounds that she is covered by the doctrine of qualified immunity. "Qualified immunity is an immunity from suit rather than a mere defense to liability." Penn v. Escorsio, 764 F.3d 102, 113 (1st Cir. 2014) (quoting Plumhoff v. Rickard, 572 U.S.765, 771-772 (2014)). The purpose of qualified immunity is to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callaahan, 555 U.S. 223, 231 (2009). This defense can be invoked at the summary judgment stage. Hernandez-Zorrilla v. Rossello-Nevarez, 2021 WL 1931956, at *5 (D.P.R. May 12, 2021) (citing Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2020)). "[O]fficers are entitled to qualified immunity under § 1983 unless[:] (1) they violated a federal statutory or constitutional right[;] and (2)

the unlawfulness of their conduct was 'clearly established at the time.'" <u>Dist. of Columbia v. Wesby</u>, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018). *See also* <u>Moreales Diaz v. Roldan Concepcion</u>, 2023 WL 2351732, 7 (D.P.R. March 3, 2023). The MJ determined that since Wilson Orthopedics failed to demonstrate that the claimed adverse employment action was motivated by political discrimination, Nolasco was entitled to qualified immunity. *See* <u>Pearson v. Callahan</u>, 555 U.S. at 245 (only after substantiating a constitutional violation can a defendant overcome a qualified immunity claim); <u>Maldonado v. Fontanes</u>, 568 F.3d 263,273 (D.P.R. 2009). The Court agrees. Plaintiff's failure to assert valid constitutional claims establishes that nullifying Nolasco's qualified immunity would be inappropriate.

    B.   <u>Breach of Contract Claims</u>

ACAA also requests that the Court grant it summary judgment on Wilson Orthopedics breach of contract claim. Plaintiff claimed that ACAA owed it $429,000 for services rendered to ACAA prior to the establishment of a contractual relationship between ACAA and Wilson Orthopedics. Docket No. 35 AT 14-15. These services were supposedly performed under contracts between Dr. Rodríguez and or other entities with whom Dr. Rodríguez was previously associated. Id. Wilson Orthopedics states that it had been assigned the right to collect debts accrued for the services rendered from 2009 to 2012 and in 2019 under the contracts between ACAA, Dr. Rodríguez,

and or other entities. Docket 50 at 14; 51-1 at ¶ 30.
Alternatively, ACAA requests that this Court decline to exercise
supplemental jurisdiction over Plaintiff's breach of contract
claims under Puerto Rico law. Docket No. 71 at 6-7.

The Court has chosen to adopt the MJ's R&R and grant
Defendants' summary judgment motions on Wilson Othropedics'
federal political discrimination claims. As such, Plaintiff's only
remaining claim is for the collection of alleged unpaid debts for
services rendered under previous contracts. "When the balance of
these factors indicates that a case properly belongs in state
court, as when the federal-law claims have dropped out of the
lawsuit in its early stages and only state-law claims remain, the
federal court should decline the exercise of jurisdiction by
dismissing the case without prejudice." Rivera v. Murphy, 979 F.2d
259, 264-265 (1st Cir. 1992). *See also* Ramos-Echevarría v. Pichis,
Inc., 659 F.3d 182, 191 (1st Cir. 2011)("When a plaintiff's anchor
claim is a federal cause of action and the court unfavorably
disposes of the plaintiff's federal claim at the early stages of
a suit, well before trial, the court generally dismisses any
supplemental state-law claims without prejudice.") As such, this
Court, in concurrence with the MJ, determines that in granting
Defendants' Motions for Summary Judgment on their federal law
claims, it also dismisses without prejudice Wilson Orthopedics'
Puerto Rico contract law claims.

## V.   CONCLUSION

For the reasons stated above, the Court **ADOPTS** the MJ's R&R at Docket No. 94, as amended. ACAA's *Motion for Summary Judgment* at Docket No. 35 is **GRANTED** and Nolasco's *Motion for Summary Judgment* at Docket No. 33 is **GRANTED**. Nolasco's *Motion for Judicial Notice* at Docket No. 46 is rendered **MOOT**. This case is DISMISSED with prejudice as to the federal law claims and without prejudice as to the state law claims.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 26, 2023.


s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE